1  MATTHEW S. WILSON, SBN 212798
2  WILSON LAW GROUP, PC
3  11622 El Camino Real, Suite 100
   San Diego, California 92130
4  Telephone (858) 777-9815
   Fax (858) 777-9812
5  matthew@wilsonlawcorp.com

6  Attorney for Plaintiffs

7

8            UNITED STATES DISTRICT COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
   LANDON WHITBY, an individual;            ) Case No. 14cv1633 LAB BLM
11 RUTH CAROLINA WHITBY, an individual; )      (consolidated with Case No.
12 ETHAN WHITBY, a minor; ISABEL WHITBY, )     15cv355)
   a minor; GABRIEL WHITBY, a minor;       )
13 SAVANNAH WHITBY, a minor;  IOULIA        ) CLASS ACTION
14 KOUPRINA, an individual; KIRILL          )
   KOUPRINA, a minor; ANNA KOUPRINA, a      ) **CONSOLIDATED CLASS**
15 minor; VERA KOUPRINA, a minor; GALINA    ) **ACTION COMPLAINT FOR**
16 KOUPRINA, a minor;  WILLIAM JHANDI, an ) **CIVIL RIGHTS VIOLATIONS**
   individual; TERESA JHANDI, an individual; )
17 BLANCIS JHANDI, a minor; DEBORA          ) JURY TRIAL REQUESTED
18 JHANDI, a minor; BRETT JENSON, an        )
   individual; MIRANDA JENSON, an           )
19 individual; SETH JENSEN, a minor; BRETT  )
20 JENSEN, a minor;  JEANNETTE MCGHEE,      ) Hon. Larry A. Burns
   an individual; JOSEPH MCGHEE, a minor;   ) Courtroom 14A (14th Fl – Annex)
21 MARIE CORBIN, a minor; ADRIAN            )
22 WHITTENBURG, an individual; ANISA        )
   WHITTENBURG, a minor; ADRIAN             )
23 WHITTENBURG II, a minor; CONSUELO        )
24 GUERRERO, an individual; TRISHA          )
   GUERRERO, an individual; ASHLEY          )
25 GUERRERO, a minor; EDUARDO               )
26 GUERRERO, a minor; VICTORIA NAYAK,       )
   an individual; MAYA FLORES, a minor;     )
27 TAMMY COLE, an individual; BRANDON       )
28 COLE, a minor; DAUD NAWAEY, an           )

individual; SHOKRIA NAWAEY, an
individual; AREZO NAWAEY, a minor;
ARASH NAWAEY, a minor; RICARDO
RICO, an individual; MAYLYNDELOW
RIMORIN, an individual; JUSTIN RICO, a
minor; JASMIN RICO, a minor;  ELLE
STOKES, an individual; CARTER STOKES,
a minor; BREAN WEBB, a minor; CALEB
WEBB, a minor; CHLOE WEBB, a minor;
DEREK MARTINEZ, a minor; MICHAEL
WILLIAMS, an individual; BONNIE
BARROWS, an individual; RICHARD
GARCIA BARROWS, a minor; EMILY
WILLIAMS, a minor; HAILEY GARCIA
BARROWS, a minor; AVION SMALLWOOD,
an individual; AIDEN WILLIAMS, a minor;
ARIEL SMALLWOOD, a minor; JAMAINE
SMALLWOOD, a minor; RAFAEL
RAMIREZ, an individual; OFELIA
RAMIREZ, an individual; RAFAEL
RAMIREZ, JR., a minor; RICARDO RAMIREZ,
a minor; REBECCA RAMIREZ, a minor; JESUS
ALFONSO FLORES, an individual;
ANGELICA FLORES, an individual;
ARISET FLORES, a minor; ADRELL
FLORES, a minor; and others similarly
situated;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Plaintiffs,

v.

CHELSEA INVESTMENT
CORPORATION, a California corporation;
CIC PHR, LP, a California limited
partnership; PHR INCLUSIONARY, LLC, a
California limited liability company; CIC
FAIRBANKS, L.P., a California limited
partnership; DDS FAIRBANKS, LLC, a
California limited liability company; CIC LA
COSTA, L.P., a California limited

2.

1   partnership; DDC LA COSTA, LLC, a California )
2   limited liability company; CIC CALAVARA,        )
    L.P., a limited partnership; CIC CALAVARA )
3   HILLS II, LLC, a California limited liability      )
    company; SILVER SAGE CIC, L.P., a                )
4   California limited partnership; CIC SILVER     )
5   SAGE, LLC, a California limited liability          )
    company; CIC LANDINGS, L.P., a                    )
6   California limited liability company; AJAX-   )
7   LANDINGS, LLC,  a California limited           )
8   liability company; CIC MANAGEMENT          )
    INC., a California corporation; CONAM          )
9   MANAGEMENT CORPORATION, a                    )
10  California corporation;                                   )
    ROSIE TERRIQUEZ, an individual; and        )
11  DOES 1-500,                                                 )
12                                                                      )
                            Defendants.                       )
13                                                                      )
14                                                                      )
15                                                                      )
16                                                                      )
17  _____ )

## **PRELIMINARY STATEMENT**

This is a class-action, civil rights case arising out of a pattern and practice of discriminatory housing practices on the basis of familial status (being families with children) under federal and state civil rights statutes.

Defendant Chelsea Investment Corporation, along with its affiliated entities, have developed more than 6,500 affordable housing units, including ones for low-income families, in San Diego County since 1984. Defendants have obtained funding, received rent subsidy payments from public funds and bonds, and acquired millions in tax credits for investors, predicated on representations of compliance with all laws, including those against discrimination.

Case No. 14cv1633 LAB (BLM)

Plaintiffs are tenants of some of these affordable housing units. As low-income families with children, however, they were treated as second-class citizens, with their children not being allowed to play outside their apartments, the children being refused entry to the pool, clubhouse, laundry room, and playground areas, prohibited from riding bikes or using other toys in any common area, and otherwise prohibited from reasonably using or accessing any common areas of the housing complex. Failure to comply with such discriminatory practices in some cases resulted in 3-day eviction notices based on children's use of common areas, no matter how innocuous.

These threats of eviction to low-income family tenants is tantamount to threatening them with having to move to a homeless shelter or worse because no other immediate housing alternatives exist for most of them, and because Chelsea Investment Corporation directly or indirectly owns or controls a vast majority of low-income housing in San Diego County.

The duty to not participate in housing discrimination is a non-delegable duty, making all legal and equitable owners and managers of the housing projects responsible for actions taken by their agents, whether employees or not.

This is a class action under *Federal Rules of Civil Procedure* Rule 23 seeking compensatory damages, punitive damages, and other equitable relief on behalf of Plaintiffs and all persons similarly situated who are past, present, or future tenants of low-income housing projects developed, owned, and/or operated by Chelsea Investment Corporation and its affiliated entities and agents, who have been, or are at risk of being, unlawfully deprived of civil rights under the Fair Housing Act, 42 U.S.C. § 3604, the California Fair Employment and Housing Act, *California Government Code* §§ 12927, 12955, et seq., Unruh Civil Rights Act, *California Civil Code* § 51, et seq, and related legal rights.

# PARTIES

## Plaintiffs

1.     Plaintiff Landon Whitby and Ruth Carolina Whitby, husband and wife, are individuals residing in San Diego County, California.

2.     Plaintiffs Ethan Whitby, Isabel Whitby, Gabriel Whitby, and Savannah Whitby are/were minor children appearing through their parents Landon Whitby and Ruth Carolina Whitby or guardian ad litem and residing in San Diego County, California.

3.     Plaintiffs Ethan Whitby, Isabel Whitby, Gabriel Whitby, and Savannah Whitby along with their parents Landon Whitby and Ruth Carolina Whitby, are collectively referred to herein as "Whitby Family."

4.     Plaintiff Ioulia Kouprina is an individual residing in San Diego County, California.

5.     Plaintiffs Kirill Kouprina, Anna Kouprina, Vera Kouprina, and Galina Kouprina are/were minor children appearing through their mother Ioulia Kouprina or guardian ad litem and residing in San Diego County, California.

6.     Plaintiffs Kirill Kouprina, Anna Kouprina, Vera Kouprina, and Galina Kouprina along with their mother Ioulia Kouprina, are collectively referred to herein as "Kouprina Family."

7.     Plaintiffs William Jhandi and Teresa Jhandi, husband and wife, are individuals residing in San Diego County, California.

8.     Plaintiffs Blancis Jhandi and Debora Jhandi are/were minor children of appearing through their parents William Jhandi and Teresa Jhandi or guardian ad litem and residing in San Diego County, California.

9.     Plaintiffs Blancis Jhandi and Debora Jhandi, along with their parents William Jhandi and Teresa Jhandi, are collectively referred to herein as "Jhandi Family."

10.     Plaintiffs Brett Jenson and Miranda Jenson, husband and wife, are individuals residing in San Diego County, California.

11.     Plaintiffs Seth Jensen and Brett Jensen are/were minor children appearing through their parents Brett Jenson and Miranda Jenson or guardian ad litem and residing in San Diego County, California.

12.     Plaintiffs Seth Jensen and Brett Jensen, along with their parents Brett Jenson and Miranda Jenson, are collectively referred to herein as "Jensen Family."

13.     Plaintiff Jeannette McGhee is an individual residing in San Diego County, California.

14.     Plaintiffs Joseph McGhee and Marie Corbin are/were minor children appearing through their custodial grandmother Jeannette McGhee or guardian ad litem and residing in San Diego County, California.

15.     Plaintiffs Joseph McGhee and Marie Corbin along with Jeannette McGhee, are collectively referred to herein as "McGhee Family."

16.     Plaintiff Adrian Whittenburg is an individual residing in San Diego County, California.

17.     Plaintiffs Anisa Whittenburg and Adrian Whittenburg II are/were minor children appearing through their parent Adrian Whittenburg or guardian ad litem and residing in San Diego County, California.

18.     Plaintiffs Anisa Whittenburg and Adrian Whittenburg II, along with their father Adrian  Whittenburg, are collectively referred to herein as "Whitttenburg Family."

19.     Plaintiff Consuelo Guerrero is an individual residing in San Diego County, California.

20.     Plaintiffs Ashley Guerrero and Eduardo Guerrero are/were minor children appearing through their mother Consuelo  Guerrero or guardian ad litem and residing in San Diego County, California.

21.     Plaintiffs Trisha Guerrero, Ashley Guerrero, and Eduardo Guerrero, along with their mother Consuelo Guerrero, are collectively referred to herein as "Guerrero Family."

22.     Plaintiff Victoria Nayak is an individual residing in San Diego County, California.

23.     Plaintiff Maya Flores is/was a minor child appearing through her mother Victoria Nayak or guardian ad litem and residing in San Diego County, California.

24.     Plaintiff Maya Flores, along with her mother Victoria Nayak, are collectively referred to herein as "Nayak Family."

25.     Plaintiff Tammy Cole is an individual residing in San Diego County, California.

26.     Plaintiff Brandon Cole is/was a minor child appearing through his mother Tammy Cole or guardian ad litem and residing in San Diego County, California.

27.     Plaintiff Brandon Cole, along with his mother Tammy Cole, are collectively referred to herein as "Cole Family."

28.     Plaintiffs Daud Nawaey and Shokria Nawaey, husband and wife, are individuals residing in San Diego County, California.

29.     Plaintiffs Arezo Nawaey and Arash Nawaey are/were minor children of appearing through their parents or guardian ad litem and residing in San Diego County, California.

30.     Plaintiffs Arezo Nawaey and Arash Nawaey, along with their parents, Daud Nawaey and Shokria Nawaey, are collectively referred to herein as "Nawaey Family."

31.     Plaintiffs Ricardo Rico and Maylyndelow Rimorin, husband and wife, are individuals residing in San Diego County, California.

32.     Plaintiffs Justin Rico and Jasmin Rico are/were minor children appearing through their parents Ricardo Rico and Maylyndelow Rimorin or guardian ad litem and residing in San Diego County, California.

33.     Plaintiffs Justin Rico and Jasmin Rico, along with their parents, Ricardo Rico and Maylyndelow Rimorin, are collectively referred to herein as "Rico/Rimorin Family."

34.     Plaintiff Elle Stokes is an individual residing in San Diego County, California.

35.     Plaintiff Carter Stokes is/was a minor child appearing through his mother Elle Stokes or guardian ad litem and residing in San Diego County, California.

36.     Plaintiff Carter Stokes and his mother Elle Stokes are collectively referred to herein as "Stokes Family."

37.     Plaintiff Brean Webb is an individual residing in San Diego County, California.

38.     Plaintiffs Caleb Webb, Chloe Webb, and Derek Martinez are/were minor children appearing through their mother Brean Webb or guardian ad litem and residing in San Diego County, California.

39.     Plaintiffs Caleb Webb, Chloe Webb, and Derek Martinez, along with their motion, Brean Webb, are collectively referred to herein as "Webb Family."

40.     Plaintiffs Michael Williams and Bonnie Barrows, husband and wife, are individuals residing in San Diego County, California.

41.     Plaintiffs Richard Garcia Barrows, Emily Williams, Hailey Garcia Barrows, and Aiden Williams are/were minor children appearing through their parents Michael Williams and Bonnie Barrows or guardian ad litem and residing in San Diego County, California.

42.     Plaintiffs Michael Williams, Bonnie Barrows, Richard Garcia Barrows, Emily Williams, Hailey Garcia Barrows, and Aiden Williams, and their parents

Michael Williams and Bonnie Barrows, are collectively referred to herein as "Williams/Barrows Family."

43.    Plaintiff Avion Smallwood is an individual residing in San Diego County, California.

44.    Plaintiffs Ariel Smallwood and Jamaine Smallwood are/were minor children appearing through their mother Avion Smallwood or guardian ad litem and residing in San Diego County, California.

45.    Plaintiffs Ariel Smallwood and Jamaine Smallwood, together with their mother Avion Smallwood, are collectively referred to herein as "Smallwood Family."

46.    Plaintiffs Rafael Ramirez and Ofelia Ramirez, husband and wife, are individuals residing in San Diego County, California.

47.    Plaintiffs Rafael Ramirez, Jr., Ricardo Ramirez, and Rebecca Ramirez are/were minor children appearing through their parents Rafael Ramirez and Ofelia Ramirez or guardian ad litem and residing in San Diego County, California.

48.    Plaintiffs Rafael Ramirez, Jr., Ricardo Ramirez, and Rebecca Ramirez, along with their parents Rafael Ramirez and Ofelia Ramirez, are collectively referred to as the "Ramirez Family."

49.    Plaintiffs Jesus Alfonso Flores and Angelica Flores, husband and wife, are individuals residing in San Diego County, California.

50.    Plaintiffs Ariset Flores and Adrell Flores are/were minor children appearing through their mother Angelica Flores or guardian ad litem and residing in San Diego County, California.

51.    Plaintiffs Ariset Flores and Adrell Flores, along with their parents Jesus Alfonso Flores and Angelica Flores are collectively referred to herein as "Flores Family."

52.    The above-mentioned Plaintiffs will be referred to collectively as "Named Plaintiffs" herein.

Case No. 14cv1633 LAB (BLM)

53.     Named Plaintiffs bring this action on behalf of themselves and all others similarly situated as described in the Class Allegations below.

<u>Defendants</u>

54.     Defendant Chelsea Investment Corporation ("Chelsea") is a corporation organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Ste. 101, Carlsbad, CA 92008.

55.     Defendant CIC PHR, LP ("CIC PHR") is a limited partnership organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Ste. 101, Carlsbad, CA 92008.

56.     Defendant PHR Inclusionary, LLC ("PHR LLC"), is a <u>general partner</u> of CIC PHR, LP, and a limited liability company organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Ste. 101, Carlsbad, CA 92008. (Upon information and belief, Defendant PHR LLC is sometimes also referred to as PHR Inclusionary Housing, LLC).

57.     Defendant CIC Fairbanks, L.P. is a partnership organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

58.     Defendant DDS Fairbanks, LLC is a limited liability company organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

59.     Defendant CIC La Costa, L.P. is a partnership organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

60.     Defendant DDC La Costa, LLC is a limited liability company organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

61.   Defendant CIC Calavara, L.P. is, upon information and belief, a partnership with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

62.   Defendant CIC Calavara Hills II, LLC is a limited liability company organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

63.   Defendant Silver Sage CIC, L.P. is a partnership organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

64.   Defendant CIC Silver Sage, LLC is a limited liability company organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

65.   Defendant CIC Silver Sage, LLC is a limited liability company organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

66.   Defendant CIC Landings, L.P. is a partnership organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

67.   Defendant Ajax-Landings, LLC is a limited liability company organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Suite 101, Carlsbad, CA 92008.

68.   Defendant CIC Management Inc. ("CICM") is a corporation organized under the laws of the State of California, with a principal place of business at 5993 Avenida Encinas, Ste. 101, Carlsbad, CA 92008.

69.   Defendant ConAm Management Corporation ("ConAm") is a corporation organized under the laws of the State of California, with a principal place of business at 3990 Ruffin Road, Suite 100, San Diego, CA 92123.

70.     Defendant Rosie Terriquez ("Terriquez") is, upon information and belief, an individual and a resident of the County of San Diego, California and employee of Defendant CICM and/or Defendant ConAm during times relevant to this action.

71.     Defendant Does 1-100 are, upon information and belief, limited liability companies or limited partnerships created by Defendant Chelsea for the purpose of owning and managing low-income apartment complexes.

72.     Defendant Does 101-200 are, upon information and belief, individuals and residents of the County of San Diego, California and employees of Defendant CICM and/or Defendant ConAm during times relevant to this action.

73.     Defendants Does 201-500 are other individuals or entities, presently unidentified, that upon information and belief are either legal and/or equitable owners of the Chelsea Apartment Complexes and/or are also engaged, directly or indirectly, in the conduct giving rise to this Consolidated Complaint. These include project-specific corporations, limited partnerships, and limited liability companies owned and/or controlled by other Defendants named above.

74.     On information and belief, Defendants have acted as agents of one or more of each other during some or all of the times relative to the subject matter of this Consolidated Complaint.

## JURISDICTION and VENUE

75.     Jurisdiction is proper in this Court pursuant to 42 U.S.C. § 3613 and by 28 U.S.C. § 1331 because the claims alleged herein arise under the laws of the United States.

76.     This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to plaintiff's federal law claims and arise out of a common nucleus of related facts.

77.     Venue in this district is proper under 28 U.S.C. §§ 1391 because a substantial part of the events giving rise to the claim occurred in the Southern District of California.

78.     This Court has personal jurisdiction over Defendants because they all reside and/or conduct business in the State of California and in the Southern District of California.

## **FACTS**

### Relationship between the Parties

79.     Plaintiffs are current or former tenants of low-income housing properties developed by Defendant Chelsea, through its subsidiaries and agents, originally managed by Defendant CICM, and now managed by Defendant ConAm. These properties are referred to collectively herein as "Chelsea Apartment Complexes."

80.     The Whitby Family, Kouprina Family, Jhandi Family, Jenson Family, McGhee Family, Whittenburg Family, Guerrero Family, Cole Family, Nawaey Family, and Rico/Rimorin Family, are current tenants of Windwood Village Apartments (hereinafter "Windwood"), a 92-unit apartment complex located at 12730 Briarcrest Place, San Diego, California 92130 in San Diego, California (hereinafter "Windwood").

81.     The Nayak Family were tenants of Windwood during the relevant periods of time to this case.

82.     The Stokes Family are tenants of Fairbanks Ridge at Del Sur[1], an apartment complex located at or around 16016 Babcock Street, San Diego, CA 92127 (hereinafter "Fairbanks").

_____

[1] [The following note is not an operative part of the Consolidated Complaint and need not be responded to by Defendants] -- Counsel for Defendants has advised that it

83.    The Webb Family and Williams/Barrows Family Plaintiffs are tenants of Hunters Pointe, an apartment complex located at or around 7270 Calle Plata, Carlsbad, CA 92009 (hereinafter "Hunters Pointe").

84.    The Smallwood Family are tenants of Mariposa Apartments, located at or around 4651 Red Bluff Place, Carlsbad, CA (hereinafter "Mariposa").

85.    The Ramirez Family are tenants of Silver Sage Apartments, located at or around 9757 Marilla Drive, Lakeside, CA 92040 (hereinafter "Silver Sage").

86.    The Flores Family Plaintiffs are current tenants of The Landings, an apartment complex located in Chula Vista, California.

<u>Ownership of Chelsea Apartment Complexes</u>

87.    Upon information and belief, the legal and/or equitable owners of each of the Chelsea Apartment Complexes includes Defendant Chelsea through a wholly-owned limited liability company ("LLC"), which in turn is the general partner that controls a limited partnership ("LP") identified as the legal owner of such Chelsea Apartment Complex.

88.    Upon information and belief, these LLCs and LPs for apartment complexes in which Named Plaintiffs are tenants, are, respectively --

      a.    In the case of Windwood, PHR Inclusionary, LLC (upon information and belief, referred to inaccurately in bond documents as "PHR Inclusionary Housing, LLC"), and CIC PHR, L.P.

---

intends to seek reconsideration of the Court's order of consolidation (Doc. #95), the order pursuant to which this Consolidated Complaint is being filed, to clarify whether the Court intended that multiple Chelsea apartment complexes would be litigated together in the same lawsuit.  Pending that requested clarification, however, all Plaintiff families from both cases are being named herein as Plaintiffs, whether tenants of Windwood or other Chelsea Apartment Complexes.

b. In the case of Fairbanks Ridge, DDS Fairbanks, LLC, and CIC Fairbanks, L.P.

c. In the case of Hunters Point, DDC La Costa, LLC, and CIC La Costa, L.P.

d. In the case of Mariposa, CIC Calavera Hills II, LLC, and CIC Calavera, L.P.

e. In the case of Silver Sage, CIC Lakeside Silversage, LLC, and Silver Sage, L.P.

f. In the case of The Landings, Ajax-Landings, LLC, and CIC Landings, L.P.

g. In the case of other apartment complexes listed in paragraph 155, Does 1-100.

89. Upon information and belief, Chelsea is the sole member and the managing member of each of PHR Inclusionary, LLC; DDS Fairbanks, LLC; DDC La Costa, LLC; CIC Calavera Hills II; CIC Lakeside Silversage, LLC; Ajax-Landings, LLC; and every other LLC formed for the purpose of acting as a general partner in the LP holding legal title to each Chelsea Apartment Complex (collectively referred to herein as the "Chelsea LLC Subsidiaries").

90. Upon information and belief, Chelsea, through a corresponding Chelsea LLC Subsidiary, is the controlling general partner of each of Defendant CIC PHR, L.P.; CIC Fairbanks, L.P.; CIC La Costa, L.P.; CIC Calavera, L.P.; Silver Sage, L.P.; CIC Landings, L.P.; and every other LP formed for the sole purpose of holding legal title to each of Chelsea Apartment Complexes ("Chelsea LP Subsidiaries").

Operation and Control of Chelsea Apartment Complexes

91. Upon information and belief, in respect of each Chelsea Apartment Complex, Chelsea and each corresponding Chelsea LP Subsidiary and Chelsea LLC Subsidiary all have interwoven obligations, supervision of each other, and

Case No. 14cv1633 LAB (BLM)

indemnification of each other, such that such Chelsea LP Subsidiary and Chelsea LLC Subsidiary are mere shell entities operating under the actual and effective control and management of Chelsea.

92.   Upon information and belief, in respect of each Chelsea Apartment Complex, a Chelsea LLC Subsidiary is general partner of a corresponding Chelsea LP Subsidiary, entitled to at least a majority of all profit, loss and other distributions (except affordable housing tax credits), the designated tax-matters general partner, and the primary indemnitor of such corresponding Chelsea LP Subsidiary.

93.   Upon information and belief, in respect of each Chelsea Apartment Complex, Defendant Chelsea is designated the "Management Agent" of each corresponding Chelsea LP Subsidiary and, pursuant to a management agreement with that subsidiary, is (a) entitled to a percentage of gross revenues of the corresponding Chelsea Apartment Complex and (b) delegated the duties of managing the corresponding Chelsea Apartment Complex, including that complex's compliance with Section 42 of the Internal Revenue Code of 1986, as amended (tax credits for affordable housing projects and limiting such credits in the case of discrimination or other violations of the Fair Housing Act).

94.   Upon information and belief, Chelsea has provided an unconditional and unlimited corporate guarantee of the performance of the Chelsea LLC Subsidiary that is the general partner of each Chelsea LP Subsidiary.

95.   Upon information and belief, the partnership agreement of each Chelsea LP Subsidiary, unconditionally (a) limits the authority of any general partner to act on behalf of the partnership where such action violates "any applicable law or regulation" and (b) limits the authority of any general partner, without the consent of the limited partners of the partnership, to "operate [each such Chelsea Apartment Complex] in such a manner or take any action" that would result in non-compliance with Section 42(i)(3) of the Code or cause the recapture of any low income housing

1    tax credit under Section 42 of the Code, requiring that rental units eligible for tax

2    credits be rented in compliance with Fair Housing Act.

3        96.    Upon information and belief, the partnership agreement of each Chelsea

4    LP Subsidiary, provides that a delegation of a general partner's duties shall not

5    excuse such delegating general partner "from overseeing and supervising on an

6    ongoing basis the activities delegated."

7        97.    Upon information and belief, each Chelsea LLC Subsidiary, acting

8    independently or through its Management Agent, delegated the property

9    management and leasing responsibilities for each corresponding apartment complex

10   during the relevant period of time to Defendant CICM and/or Defendant ConAm,

11   each a leasing agent and designated day-to-day operational manager of each

12   corresponding Chelsea Apartment Complex.

13

14                   Property Management and Leasing Agents

15       98.    Upon information and belief, the only management and leasing

16   companies for each Chelsea Apartment Complex during the relevant period of time

17   have been Defendants CIC Management and ConAm Management.

18       99.    The apartment manager for Windwood during much of the relevant

19   period of time in this case was Defendant Terriquez, an employee of Defendants

20   CICM and/or ConAm, and an authorized agent of each of the legal and/or equitable

21   owners of Windwood as described above.

22       100.   The apartment manager(s) for Fairbanks Ridge during the relevant

23   period of time in this case were Doe Defendants, employees of Defendants CICM

24   and/or ConAm, and authorized agents of each of the legal and/or equitable owners of

25   Fairbanks Ridge as described above.

26       101.   The apartment manager(s) for Hunters Pointe during the relevant period

27   of time in this case were Doe Defendants, employees of Defendants CICM and/or

28

ConAm, and authorized agents of each of the legal and/or equitable owners of Hunters Pointe as described above.

102. The apartment manager(s) for Mariposa during the relevant period of time in this case were Doe Defendants, employees of Defendants CICM and/or ConAm, and authorized agents of each of the legal and/or equitable owners of Mariposa as described above.

103. The apartment manager(s) for Silver Sage during the relevant period of time in this case were Doe Defendants, employees of Defendants CICM and/or ConAm, and authorized agents of each of the legal and/or equitable owners of Silver Sage as described above.

104. The apartment manager(s) for The Landings during the relevant period of time in this case were Doe Defendants, employees of Defendants CICM and/or ConAm, and authorized agents of each of the legal and/or equitable owners of The Landings as described above.

105. The apartment manager for each other Chelsea Apartment Complex during much of the relevant period of time in this case were Doe Defendants, each employees of Defendants CICM and/or ConAm, and an agents of each of the legal and/or equitable owners of each such Chelsea Apartment Complex as described above (collectively, Terriquez and Does 101-200 are referred to herein as the "Chelsea Onsite Managers").

## Discriminatory Conduct

106. Defendants, acting individually or in concert with others, directly or through agents, have engaged in a pattern or practice of establishing and/or maintaining a preference, limitation and/or discrimination based on familial status, or an intent to make any such preference, limitation and/or discrimination against families with children, including Plaintiffs, on account of familial status in the operation of each Chelsea Apartment Complex with the purpose and effect of

18.

1   limiting or excluding families from residing in or enjoying said housing

2   accommodations fully and on an equal basis with persons who are not families with

3   children.

4

5   Publication of Discriminatory Statements and Policies

6   107.   Defendants' conduct included, in connection with the rental of a

7   dwelling, making, printing or publishing notices, statements and/or advertising

8   (leases, rules, signs, etc.) that indicated a preference, limitation and/or discrimination

9   based on familial status, or manifested an intent to make any such preference,

10   limitation and/or discrimination, and the implementation and/or enforcement of

11   policies, procedures, rules, and/or regulations that did or were intended to

12   discriminate against and/or have a disparate impact on families with children.

13   108.   CICM, under the supervision and oversight of Chelsea, each Chelsea LP

14   Subsidiary, and/or each Chelsea LLC Subsidiary, developed and provided lease

15   agreements, signage and other notices, statements, and advertising, including certain

16   policies, procedures, rules, and/or regulations, to be made, printed, published,

17   implemented, and enforced at each corresponding Chelsea Apartment Complex on

18   behalf of the equitable/beneficial owner thereof.

19   109.   To rent a dwelling at a Chelsea Apartment Complex, tenants are

20   required to sign a lease agreement and accompanying documents reflecting

21   additional terms and conditions of use grounds, common areas and available

22   facilities at such Chelsea Apartment Complex (a "Lease Agreement"), including the

23   Pool Rules, the Community Policies and Procedures, and the Community Guidelines

24   (such capitalized terms being defined herein below).

25   110.   Said Lease Agreement requires tenants of a Chelsea Apartment

26   Complex to comply with all occupancy rules and regulations governing that

27   property, including posted signs and placards, whether in effect or posted at the time

28

Case No. 14cv1633 LAB (BLM)

of lease signing or thereafter promulgated and delivered to the tenants or otherwise posted.

111.   The Chelsea Onsite Managers, as employees of CICM and/or ConAm and on their behalf, did make, print, publish, implement and enforce at each corresponding Chelsea Apartment Complexes the Lease Agreements, signage and other notices, statements, and advertising, including certain policies, procedures, rules, and/or regulations developed by CICM and/or ConAm, the designated leasing agent of Defendants who were acting under the direct supervision and oversight of Chelsea, the Chelsea LLC Subsidiaries and the Chelsea LP Subsidiaries, as described above.

112.   Under the supervision, oversight, and/or agency of Defendants, the policies, procedures, rules, and/or regulations  printed, published, and/or otherwise implemented by Defendants contained notices and statements that included one or more indications of a preference, limitation and/or discrimination based on familial status, and/or manifested an intention to make such a preference, limitation and/or discrimination.

113.   In connection with the common areas, recreational facilities, lakes/ponds, and/or laundry facilities generally available to any tenant of a Chelsea Apartment Complex, Defendants made, printed and/or published the following notices and statements indicating a preference, limitation and/or discrimination based on familial status and/or manifested an intention to make such preference, limitation and/or discrimination known as "community policies and procedures," or notices and/or statements containing substantially identical language (hereinafter, the "Community Policies and Procedures")--

      a.    <u>Common Areas and Supervision</u>.  All common areas, including but not limited to parking lots, stairwells, breezeways, jogging trails, laundry rooms, courtyard areas, clubrooms, sports courts, sidewalks, creeks, lakes, pools and lawns must be kept clear at all

times of any … bicycles, athletic equipment, riding and other toys. . . .

b.   The riding of bicycles or any other riding vehicle will not be permitted in any common area unless otherwise approved by the Community Manager.   . . . No playing is allowed in any landscaped area.  Play should be limited to those areas designated (when provided by Management) for playing outside games.

c.   All persons under the age of 12 residing in the community must be attended by a parent, guardian or legal custodian, or an authorized representative thereof 18 years of age or older, upon the return of the child from school or other activity.  Children under 12 may not be permitted to remain in the common areas of the community without such supervision and must have access to their apartment, upon return from school or other activity.  The failure of a Resident to provide such supervision and access shall constitute a breach of the Resident's lease.

d.   <u>Recreational Facilities</u>. . . . persons under the age of 12 must be accompanied at all times by an adult.  Persons under the age of 14 must be accompanied by an adult, while in the swimming pool/spa area.

e.   <u>Lakes/Ponds</u>.  If allowed, minors 14 years of age and under must be accompanied at all times by an adult.

f.   <u>Laundry Facilities</u>. Residents shall not permit persons under the age of 12 to go to the laundry room unless accompanied at all times by an adult.

114.   In connection with the general use of the grounds and/or common areas generally available to any tenant of a Chelsea Apartment Complex, Defendants made, printed and/or published the following notices and statements indicating a

21.

1    preference, limitation and/or discrimination based on familial status and/or

2    manifesting an intention to make such preference, limitation and/or discrimination

3    known as "community guidelines" or notices and/or statements containing

4    substantially identical language (hereinafter, the "Community Guidelines") —

5         Skateboarding, rollerblading, scooters and/or bicycle riding are not

6         permitted on apartment community property at any time.

7

8    115.  In connection with the swimming pool and hot tub generally available

9    to any tenant of a Chelsea Apartment Complex, Defendants made, printed and/or

10   published the following notices and statements indicating a preference, limitation

11   and/or discrimination based on familial status and/or manifesting an intention to

12   make such preference, limitation and/or discrimination known as the "pool rules" or

13   notices and/or statements containing substantially identical language (hereinafter, the

14   "Pool Rules")--

15        a.   Children under the age of fourteen (14) shall not use the pool

16             without an adult in attendance.

17        b.   For every three (3) children at the pool there must be at least one

18             (1) accompanying adult, who can swim, to supervise.

19        c.   No toys, inner tubes or any other objections whatsoever will be

20             allowed in the Pool at any time.

21   116.  In connection with the swimming pool and hot tub area and other

22   common areas and grounds generally available to any tenant of a Chelsea Apartment

23   Complex, Defendants made, printed and/or published the following notices and

24   statements on signs indicating a preference, limitation and/or discrimination based on

25   familial status and/or manifesting an intention to make such preference, limitation

26   and/or discrimination known as or notices and/or statements on signs containing

27   substantially identical language (hereinafter, the "Signage")--

28

Case No. 14cv1633 LAB (BLM)

      a.     Persons under 14 years of age must be supervised by a person 18 years or older.

      b.     No one under the age of 14 allowed in pool area without direct and constant supervision of an adult.

      c.     No skateboarding, bicycle riding, roller blading, scooters riding.

117.   Defendants continue to make, print and/or publish one or more of the Pool Rules, the Community Policies and Procedures, Community Guidelines and Signage in such a pattern and practice of discrimination so as to constitute continuing violations.

118.   Furthermore, the statute of limitations for minors is tolled until two years after reaching majority, thereby implicating the Defendants acts of making, printing or publishing the Pool Rules, the Community Policies and Procedures, Community Guidelines and Signage for some minor children Plaintiffs all the way back to their date of move-in to a Chelsea Apartment Complex.

## Application and Enforcement of Discriminatory Policies

119.   In addition to the existence of publications and signs indicating a preference, limitation and/or discrimination based on familial status and/or intention to make such preference, limitation and/or discrimination in connection with the rental of a dwelling at a Chelsea Apartment Complex and provision of services to tenants of a Chelsea Apartment Complex, Defendants also implemented and enforced such discriminatory policies against tenant families of each Chelsea Apartment Complex.

120.   In their role as employee of Defendant CICM and agent of Defendants, Chelsea Onsite Managers implemented and regularly and routinely enforced certain policies, procedures, rules, and/or regulations developed by CICM, an agent of Defendants who was acting under the direct supervision and oversight of Chelsea, the Chelsea LLC Subsidiaries, and/or the Chelsea LP Subsidiaries as described

above, which included one or more of the Pool Rules, the Community Policies and Procedures, the Community Guidelines, and the Signage.

121.   Even where rules and regulations described above were not explicitly set forth in written documents, the policies of enforcing such policies, procedures, rules, and/or regulations continued in force and effect by the Defendants through their agents, the Chelsea Onsite Managers' conduct and/or through subsequent signage or written notices to tenants.

122.   Some examples of this enforcement against Plaintiffs is as follows:

a.      Minor tenants were denied the right to play outside their apartment without adult supervision;

b.      Minor tenants were prohibited from sitting on the grass and looking at books, even when promised that the children would do so "quietly;"

c.      Minor tenants that could swim were asked to leave the pool and/or swimming area until they were accompanied by an adult;

d.      Tenants with minor children were threatened that their families would get 3-Day Notices because they were standing and talking with skateboards;

e.      Minor tenants were regularly instructed to use their toys, skateboards, rollerblades, bikes, and similar personal property in the public sidewalks, streets and thoroughfares outside the complex, rather than in the common areas and grounds of the complex;

e.      Minor tenants regularly had their toys, skateboards, rollerblades, bikes, and similar personal property temporarily confiscated, even when not being used in an unsafe manner, and were only returned after verbal and/or written "warnings" were delivered to the minor tenant's parent or guardian;

f.     Minor tenants, in some case, their toys, skateboards, rollerblades, bikes, and similar personal property permanently confiscated without compensation, even when not being used in an unsafe manner; and

g.     Minor tenants were denied the right, regardless of age, to "play" or be anywhere other than a tiny play area designed for minor children four years of age or younger.

123.   Violation of said rules and regulations were stated to be material breaches of lease agreements and a basis for lease termination.

124.   The existences of the Community Policies and Procedures, Community Guidelines, Pool Rules, and Signage, as well as the enforcement thereof by Chelsea Onsite Managers had the effect of "chilling" tenants of the Chelsea Apartment Complexes with children from accessing any common area or enjoying any service available to other adult tenants of the Chelsea Apartment Complexes, and the possible confiscation of their personal property by management.

125.   On some occasions, Plaintiffs were threatened with or given "3-Day Notices or Quit" to vacate their homes based solely on perceived infractions of the Pool Rules, the Community Policies and Procedures, and the Community Guidelines contained in each tenant's Lease Agreement, or posted on the Signage.

126.   Said Three-Day Notices stated that the Lease Agreement had been breached in one or more of the clauses identified above, and threatened that if the Plaintiffs did not comply, they had three days to surrender the apartment, face legal proceedings which could include attorney fees, court costs, and punitive damages, and a negative credit report being submitted to credit reporting agencies.

127.   Regularly and systematically, the Chelsea Onsite Managers, as agents of Defendants and employees of CICM, upon discovering a perceived infraction of a Pool Rules, the Community Policies and Procedures, and/or the Community Guidelines, printed and published a new copy of the Pool Rules, the Community

Policies and Procedures, and/or the Community Guidelines, highlighting the statement(s) contained therein that were alleged to have been violated, and placing each such new copy on the door or in the entryway to Plaintiffs' dwelling.

128.   Even though Defendants have distributed additional sets of rules over the course of years, some changing some of the obvious discriminatory language challenged above, there has never been a formal rescission or withdrawing of those discriminatory rules and regulations for those tenants residing in the Chelsea Apartment Complexes prior to the distribution of additional sets of rules, and such changes continue to have a disparate impact on families with children by attempting to indirectly limit children's activities by restricting activities generally associated with children, such as "playing," "bicycling" and "skateboarding".

129.   Upon information and belief, even after CICM was replaced by ConAm as manager of a Chelsea Apartment Complex, some of these Community Policies and Procedures, Community Guidelines, Pool Rules, and Signage, challenged herein were not rescinded or withdrawn by Defendants.

130.   Some examples of the Community Policies and Procedures, Community Guidelines, Pool Rules, and Signage that remain in place are as follows:

a.       Written rules and signs stating that using bicycles, scooter, skateboards, roller-skating and/or inline-skating were strictly prohibited.

b.       Rules, signs and other written materials indicating that children under the age of 14 are prohibited from accessing the pool and/or hot tub areas without adult supervision;

c.       Rules, signs and other written materials indicating that no children are allowed to use a playground area without adult supervision;

d.      Tenant files and current Lease Agreement still require compliance with Community Policies and Procedures, Community Guidelines, Pool Rules, and Signage enacted and enforced by CICM.

131.   Despite the harassment and discrimination by the Defendants described above, moving elsewhere was not a simple or viable solution to Plaintiffs because these apartment complexes are low-income housing and difficult to obtain, with wait lists of approximately eight (8) years.

132.   Moving elsewhere would additionally be difficult because the owners and/or managers of these apartment complexes have common ownership and/or management of a number of low-income housing apartment complexes in both the San Diego area and border communities to the east of San Diego, such as Brawley, El Centro, and Calexico.

133.   Actions of the Chelsea Onsite Managers, who engaged in this discriminatory conduct are the responsibility of the previously named Defendants under the legal doctrine of respondeat superior and/or non-delegable duties of legal and/or equitable owners to not engage in housing discrimination, whether pursuant to applicable law and/or pursuant to the written agreements among the Defendants

134.   By reason of Defendants' unlawful acts and practices, Plaintiffs have suffered multiple and repetitive violations of their civil rights, deprivation of the full use and enjoyment of tenancy, and in some cases emotional distress and mental anguish, and other actual, statutory, and general damages according to proof.

135.   In doing the acts of which Plaintiffs complain herein, Defendants and their agents and employees acted intentionally and recklessly to violate Plaintiffs' civil rights. Accordingly, Plaintiffs are entitled to punitive damages.

136.   Evidence of the intentional and reckless nature of Defendants' conduct includes the fact that the Chelsea Onsite Managers have undergone hours of housing discrimination training, extensive manuals and policies proscribing housing discrimination, and the notices, signage, and policies described above have been, and

1    continue to be, present at multiple other properties owned and/or managed by the

2    Defendants herein, sometimes verbatim.

3        137.   Upon information and belief, unless enjoined, Defendants will continue

4    to engage in the unlawful acts and the pattern or practice of discrimination based on

5    familial status described above.

6

7                    Alter Ego Relationship Among Defendants

8        138.   Upon information and belief, Defendants Chelsea, the Chelsea LP

9    Subsidiaries and Chelsea LLC Subsidiaries are part of a single, standardized business

10   structure set up by Defendant Chelsea for the purpose of obtaining financing to

11   construct, operate and own apartment complexes by earning affordable housing tax

12   credits under Section 42 of the Code that it "sells" to limited partners.

13       139.   Upon information and belief, Chelsea formed CIC PHR LP and PHR

14   Inclusionary LLC for the principal purpose of generating affordable housing tax

15   credits under Section 42 of the Code so as to attract investors to facilitate the

16   financing it needed to construct, operate and own Windwood.

17       140.   Upon information and belief, Defendants CIC Fairbanks, L.P. and DDS

18   Fairbanks, LLC were created by Chelsea for the sole purpose of the single venture of

19   development, financing, and management of Fairbank Ridge.

20       141.   Upon information and belief, Defendants CIC La Costa, L.P. and DDC

21   La Costa, LLC, were created by Chelsea for the sole purpose of the single venture of

22   development, financing, and management of Hunters Pointe.

23       142.   Upon information and belief, Defendants CIC Calavera, L.P. and CIC

24   Calavera Hills II, LLC, were created by Chelsea for the sole purpose of the single

25   venture of development, financing, and management of Mariposa.

26       143.   Upon information and belief, Defendants Silver Sage, L.P. and CIC

27   Lakeside Silversage, LLC, were created by Chelsea for the sole purpose of the single

28   venture of development, financing, and management of Silver Sage.

144.   Upon information and belief, Defendants CIC Landings, L.P. and Ajax-Landings, LLC, were created by Chelsea for the sole purpose of the single venture of development, financing, and management of The Landings.

145.   Upon information and belief, every other Chelsea LLC Subsidiary and Chelsea LP Subsidiary, were each created by Chelsea for the sole purpose of the single venture of development, financing, and management of each corresponding Chelsea Apartment Complexes.

146.   Upon information and belief, in connection with selling its affordable housing tax credits to investors, and as is standard for such tax credit financing transactions,

a.   Chelsea executed a corporate guarantee of the obligations of the general partners of each Chelsea LP Subsidiary;

b.   Chelsea was appointed Management Agent for each Chelsea LP Subsidiary, pursuant to which the corresponding Chelsea LLC Subsidiary, delegated its duties as "general partner" of its corresponding Chelsea LP Subsidiary.

c.   Chelsea covenanted in the partnership agreement to ensure absolute compliance by each Chelsea LP Subsidiary, with Section 42 of the Code (which includes a prohibition against violating the Fair Housing Act), such covenants being fully and unconditionally guaranteed/indemnified by Chelsea as well as the corresponding Chelsea LLC Subsidiary.

d.   Chelsea and each Chelsea LLC Subsidiary agreed in the partnership agreement that any action taken in violation of law was prohibited and any action jeopardizing the existence of tax credits under Section 42 of the Code (which includes a prohibition against violating the Fair Housing Act) or their revocation were prohibited without limited partner approval.

e.   The non-delegation without oversight and supervision requirement of partnership agreement for each Chelsea LP Subsidiary, was rendered a 'nullity" because Chelsea (as managing member of each Chelsea LLC Subsidiary)

1   was required to oversee and supervise itself (the Management Agent of the Chelsea

2   LP Subsidiary).

3       147.   Upon information and belief, Defendant CICM is organized and

4   controlled, and its business affairs conducted, such as to make it a mere

5   instrumentality and agent of Defendant Chelsea.

6       148.   Upon information and belief, the Defendants Chelsea, CICM, the

7   Chelsea LLC Subsidiaries, the Chelsea LP Subsidiaries have such a unity of interest

8   and ownership between each other that the individuality or separateness of Chelsea

9   has ceased and that adherence to any fiction of separate existence would promote

10   injustice by undermining the language and intent of housing discrimination laws.

11       149.   Upon information and belief, this unity of interests includes, but is not

12   limited to the following:

13       a.   Defendants Chelsea, CICM, the Chelsea LLC Subsidiaries, the

14       Chelsea LP Subsidiaries, The Schmid Family Trust dated as of

15       July 22, 1996, James J. Schmid, and Lynn Harrington Schmid all

16       share the same office location.

17       b.   Defendants Chelsea, CICM, the Chelsea LLC Subsidiaries, the

18       Chelsea LP Subsidiaries employ the same attorneys.

19       c.   The Chelsea LLC Subsidiaries and the Chelsea LP Subsidiaries

20       were created and are maintained as mere shells, instrumentalities

21       or conduits for a single venture of Chelsea, namely development,

22       financing, managing, and obtaining tax credits for the Chelsea

23       Apartment Complexes.

24       d.   Upon information and belief, Chelsea, the Chelsea LLC

25       Subsidiaries, the Chelsea LP Subsidiaries, and CICM use each

26       other to procure labor and/or services for each other.

27       e.   Upon information and belief, Chelsea, the Chelsea LLC

28       Subsidiaries, and the Chelsea LP Subsidiaries utilize each other

1   as mere conduits for millions of dollars in tax credits.

2   f.   Upon information and belief, and as evidenced by some grossly

3        improper financial records already discovered, Chelsea, the

4        Chelsea LLC Subsidiaries, and/or the Chelsea LP Subsidiaries

5        have failed to maintain adequate or proper corporate or financial

6        records, thus causing confusion of the records of separate entities.

7   g.   Upon information and belief, Chelsea, the Chelsea LLC

8        Subsidiaries, and/or the Chelsea LP Subsidiaries have failed to

9        maintain proper and accurate SEC related documentation, thus

10       causing confusion between entities.

11  h.   Upon information and belief, at least the Chelsea LLC

12       Subsidiaries and/or the Chelsea LP Subsidiaries were

13       inadequately capitalized.

14  i.   Upon information and belief, discovery in this case will reveal

15       additional indicia of the alter ego relationship between these

16       parties.

17  j.   Upon information and belief, James J. Schmid and Lynn

18       Harrington Schmid are the sole trustees, beneficiaries, and/or

19       legal and/or equitable owners of The Schmid Family Trust dated

20       as of July 22, 1996.

21  k.   Upon information and belief, James J. Schmid, Lynn Harrington

22       Schmid, and/or The Schmid Family Trust dated as of July 22,

23       1996, are the sole shareholders of Defendants Chelsea and CICM,

24       and thus legal and/or equitable owners of both corporations.

25  l.   Upon information and belief, James J. Schmid is the sole director,

26       chief executive officer, chief financial officer, and treasurer of

27       Chelsea.

28  m.   Upon information and belief, James J. Schmid is the sole director,

31.

1    chief executive officer, chief financial officer, and treasurer of

2    Defendant CICM.

3    n.    Upon information and belief, Defendant Lynn Harrington Schmid

4    is the secretary of Defendants Chelsea and CICM.

5    m.    Upon information and belief, Defendant James J. Schmid is

6    sometimes also referred to individually as being the "managing

7    member" of each Chelsea LLC Subsidiaries.

8    150.   Upon information and belief, adherence to any fiction of separate

9  existence of the Chelsea, CICM, the Chelsea LLC Subsidiaries, and the Chelsea LP

10  Subsidiaries would promote injustice by undermining the language and intent of

11  housing discrimination laws because Chelsea (i) is the principal recipient of most of

12  the financial advantages of the Chelsea LLC Subsidiaries and the Chelsea LP

13  Subsidiaries; (ii) has actual and effective control over the Chelsea LLC Subsidiaries

14  and the Chelsea LP Subsidiaries, as well as day-to-day control over the Chelsea

15  Apartment Complexes through its affiliated agent and mere instrumentality, CICM;

16  (iii) is contractually responsible for any liabilities of the Chelsea LLC Subsidiaries,

17  the Chelsea LP Subsidiaries and the other partners, (A) directly pursuant to a

18  corporate guarantee of the Chelsea LLC Subsidiaries and the Chelsea LP

19  Subsidiaries against any losses from the activities of the partnership, and (B)

20  indirectly through its Chelsea LLC Subsidiaries, which are contractually obligated to

21  indemnify all other partners of the corresponding Chelsea LP Subsidiary, including

22  the partnership itself.

23

24  **CLASS ACTION ALLEGATIONS**

25  151.   Named Plaintiffs seek to represent a class of similarly situated tenants in

26  low-income housing complexes in California that were developed, constructed, and

27  managed by the same family of companies, namely, those owned or controlled by

28  Defendant Chelsea.

Case No. 14cv1633 LAB (BLM)

152.   Upon information and belief, the development, publication, enactment and enforcement of the discriminatory policies, procedures, rules, and/or regulations (leases, rules, signs, etc.) described above for Windwood, Fairbank Ridge, Hunters Pointe, Mariposa, Silver Sage, and The Landing  are each substantially the same as that used by Defendants against tenants with children at each of its other Chelsea Apartment Complexes.

153.   Named Plaintiffs herein seek to represent a class of tenants with children who have resided at Windwood, Fairbank Ridge, Hunters Pointe, Mariposa, Silver Sage, and The Landing, or any other Chelsea Apartment Complex owned or managed by the Defendants in this case where the same (or substantially the same) Community Policies, Community Guidelines, Pool Rules, and/or Signage.

154.   The number of members of the class on whose behalf Named Plaintiffs sue is unknown, but it is estimated to be so numerous that joinder of all such members is impracticable. According to public reports, Defendant Chelsea has developed over 6,500 units of similar properties, most in San Diego County, California, and upon information and belief, these have been run and managed by Defendant Chelsea-owned or operated affiliate companies.  Because the units in question are for families with children, it is anticipated that the potential number of similarly situated class members is well over 12,000 individuals.

155.   Upon information and belief, the Chelsea Apartment Complexes that are low-income housing properties for families that may have tenants similarly situated to Named Plaintiffs, include the following:

- 15th & Commercial, 140-unit complex, located at or around 1506 Commercial Street, San Diego, CA
- 16th & Market/St Vincent de Paul, 136-unit complex, located at or around 640 - 16th Street, San Diego, CA
- Beachwind Apartments, 15-unit complex, located at or around 624 12th Street, Imperial Beach, CA 91932

1
2
- Brawley Family Apartments, 80-unit complex, located at or around 1690 "C" Street, Brawley, CA 92227

3
4
- Brawley Garden Family Apartments, 81-unit complex, located at or around 221 Best Road, Brawley, CA 92227

5
6
- Calexico Family Apartments, 80-unit complex, located at or around 2301 Meadows Drive, Calexico, CA 92231

7
8
- Cedar Creek Apartments (aka Fanita 48 Family Apts), 47-unit complex, located at or around 8616 Fanita Drive, Santee, CA 92071

9
10
- Cityplace, 70-unit complex, located at or around 1401 "S" Street, Bakersfield, CA

11
12
- Countryside Family Apartments, 73-unit complex, located at or around 1751 Adams Avenue, El Centro, CA 92243

13
14
- Estrella del Mercado, 92-unit complex, located at or around 1985 National Ave., San Diego, CA 92113

15
16
- Fairbanks Ridge at Del Sur, 204-unit complex, located at or around 16016 Babcock Street, San Diego, CA 92127

17
18
- Glen Ridge, 78-unit complex, located at or around 3555 Glen Ave, Carlsbad, CA 92010

19
20
- Hatfield Homes, 48-unit complex, located at or around 1050 N. Imperial Ave, Brawley, CA

21
22
- Heber Family Apartments I, 153-unit complex, located at or around 1137 Dogwood Road, Heber, CA 92249

23
24
- Hunters Pointe, 168-unit complex, located at or around 7270 Calle Plata, Carlsbad, CA 92009

25
26
- Iris Apartments, 20-unit complex, located at or around 641 N. Vulcan Ave., Encinitas, CA 92024

27
28
- Las Brisas Apartments, 72-unit complex, located at or around 2001 N. 8th Street, El Centro, CA

▪ Mariposa Apartments, 106-unit complex, located at or around 4651 Red Bluff Place, Carlsbad, CA 92008

▪ Market Square Manor, 200-unit complex, located at or around 525 14th Street, San Diego, CA 921015514

▪ Oakridge Apartments, 41-unit complex, located at or around 10 Willowood Drive, Oakdale, CA 95361

▪ Pacific Sun Apartments, 6-unit complex, located at or around 7911 Slater Avenue, Huntington Beach, CA 92647

▪ Rancho Buena Vista Apartments, 150-unit complex, located at or around 2155 Corte Vista, Chula Vista, CA 91915

▪ Rancho Del Norte Apartments, 119-unit complex, located at or around 6775 Saintsbury Glen, San Diego, CA 92127

▪ Salvation Army Door of Hope, 24-unit complex, San Diego, CA

▪ Seabreeze Apartments, 38-unit complex, located at or around 12757 Seabreeze Farms Drive, San Diego, CA 92130

▪ Silver Sage Apartments, 80-unit complex, located at or around 9757 Marilla Drive, Lakeside, CA 92040

▪ St Regis Park Apartments, 119-unit complex, located at or around 1025 Broadway, Chula Vista, CA 91911

▪ Teresina, 440-unit complex, located at or around 1250 Santa Cora Ave, Chula Vista, CA

▪ Terramar Apartments, 21-unit complex, located at or around 13481 Silver Ivy Lane, San Diego, CA 92129

▪ The Crossings, 108-unit complex, located at or around 13533 Zinnia Hills Place, San Diego, CA 92130

▪ The Landings, 92-unit complex, located at or around 2122 Burdock Way, Chula Vista, CA 91910

1   ▪ The Landings II, 143-unit complex, located at or around 2122 Burdock
2       Way, Chula Vista, CA 91910
3   ▪ Torrey Highlands Apartments, 76-unit complex, located at or around
4       13352 Torrey Meadows Drive, San Diego, CA 92129
5   ▪ Verbena Family Apartments, 80-unit complex, located at or around 3774
6       Beyer Boulevard, San Ysidro, CA 92173
7   ▪ Via Dorado, 80-unit complex, located at or around 1081 Meadows
8       Drive, Calexico, CA 92231
9   ▪ Villa del Sol, 52-unit complex, located at or around 1080 Meadow
10      Drive, Calexico, CA
11  ▪ Villa Andalucia, 32-unit complex, located at or around 6591 Rancho Del
12      Sol Way, San Diego, CA 92130
13  ▪ Villa Esperanza, 72-unit complex, located at or around 651 E. Bonita
14      Place, Calipatria, CA 92233
15  ▪ Villa Fortuna, 64-unit complex, located at or around 235 N. Best
16      Avenue, Brawley, CA
17  ▪ Villa Glen, 26-unit complex, located at or around 6984 Torrey Santa Fe
18      Road, San Diego, CA 92129
19  ▪ Villa Paloma (aka Heber Family Apartments II), 153-unit complex,
20      located at or around 15 West Hawk Street, Heber, CA 92249
21  ▪ Westmorland Family Apartments, 65-unit complex, located at or around
22      181 G Street, Westmorland, CA 92281
23  ▪ Willow Glen Apartments, 135-unit complex, located at or around 1625
24      Scarlet Ash Ave, Natomas, CA
25  156.   This suit poses questions of law and fact that are common to and affect
26  the rights of all members of the class. The common questions of law and fact
27  shared by all class members include, but are not limited to:
28

Case No. 14cv1633 LAB (BLM)

a.   Whether the Community Policies and Procedures, Community Guidelines, Pool Rules and Signage challenged herein indicate a preference, limitation and/or discrimination based on familial status.

b.   Whether the Community Policies and Procedures, Community Guidelines, Pool Rules and Signage challenged herein indicate or manifest an intention to make such preference, limitation and/or discrimination based on familial status.

c.   Whether the implementation of the Community Policies and Procedures, Community Guidelines, Pool Rules and Signage challenged herein constitute discrimination against families with children in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of their familial status.

d.   Whether the enforcement of the Community Policies and Procedures, Community Guidelines, Pool Rules and Signage challenged herein constitute discrimination against families with children in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of their familial status.

e.   What is the number of violations occurring when a published statement or enforced (or threatened to be enforced) policy or rule is in effect and/or enforced (or threatened to be enforced) over a period of time?[2]

f.   What is the appropriate calculation for statutory, actual and punitive damages for each violation?

_____

[2] For example, is each day a new violation?

Case No. 14cv1633 LAB (BLM)

157.   The timeframe for classification of the class should include any current or former adult tenant of a Chelsea Apartment Complex who resided with minor children at any time during the two years prior to the filing of this action as well as current and former tenants under the age of 20 years old as of the filing of this action (for whom these causes of action toll until their age of majority, for the entire period of time of such discriminatory housing practice and up to two years after reaching the age of majority), including any such tenants unlawfully evicted on a discriminatory basis, to the present, and future tenants, who have had, or in the future will be tenants at these low-income housing projects.

158.   Named Plaintiffs may seek sub-classes of Plaintiffs consisting of current and former tenants from each apartment complex with respect to determination of damages.

159.   The claims of the named Plaintiffs are typical of the claims of class members as a whole, because Defendants have implemented and pursued a policy or practice of engaging in the practices described herein over a number of years, often using the same form documents and discriminatory language.   Furthermore, upon information and belief, the experiences of the named Plaintiffs, as alleged herein, are typical of the experience of members of the Plaintiff Class and of the Plaintiffs in the previously filed action.

160.   Defendants, the party opposing the class, has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

161.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy of the claims of the class plaintiffs because questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Case No. 14cv1633 LAB (BLM)

162.   Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class because Plaintiffs' counsel possesses the requisite resources and ability to prosecute this action and because the class representatives' interests are consistent with the interests of the class.

## FIRST CAUSE OF ACTION

*Federal Fair Housing Act, 42 U.S.C. § 3604(b)*

163.   Plaintiffs reallege and incorporate by reference paragraphs 1-162, above.

164.   Defendants' actions have injured Plaintiffs in violation of the federal Fair Housing Act, 42 U.S.C. § 3604(b) by discriminating against Plaintiffs in the terms, conditions, or privileges of rental of units in the Housing Complex or other low-income housing complex identified herein, or in the provision of services or facilities in connection therewith, because of familial status, as outlined herein.

165.   Plaintiffs are entitled to actual and punitive damages, injunctive relief, and attorney fees and costs, according to proof.

## SECOND CAUSE OF ACTION

*Federal Fair Housing Act, 42 U.S.C. § 3604(c)*

166.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 165, above.

167.   Defendants have injured Plaintiffs in violation of the federal Fair Housing Act, 42 U.S.C. § 3604(c) by making, printing, publishing (or causing the same) of notice, statement, or advertisement with respect to the rental of dwellings in the Housing Complex that indicates a preference, limitation, or discrimination against Plaintiffs because of familial status as outlined herein.

168.   Plaintiffs are entitled to actual and punitive damages, injunctive relief, and attorney fees and costs, according to proof.

### THIRD CAUSE OF ACTION

*Federal Fair Housing Act, 42 U.S.C. § 3617*

169.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 168, above.

170.   Defendants have injured Plaintiffs in violation of the federal Fair Housing Act, 42 U.S.C. § 3617 by coercing, intimidating, threatening, or interfering with persons in their exercise or enjoyment of rights protected by the Fair Housing Act in violation of 42 U.S.C. § 3617, naming the right to be free from limitation or discrimination in housing because of familial status. Fair Housing Act, 42 U.S.C. § 3604(b) by discriminating against Plaintiffs in the terms, conditions, or privileges of rental of units in the Housing Complex or other low-income housing complex identified herein, or in the provision of services or facilities in connection therewith, because of familial status, as outlined herein.

171.   Plaintiffs are entitled to actual and punitive damages, injunctive relief, and attorney fees and costs, according to proof.

### FOURTH CAUSE OF ACTION

*California Fair Employment and Housing Act,*

*California Government Code §§ 12927, 12955, et seq*

172.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 171, above.

173. Defendants have been, at all times relevant herein, an "owner" and/or "person" within the meaning of *California Government Code* § 12927(e) and (f), and § 12955 (a) and (f) of Housing Complex, or other housing complex identified herein.

174. Defendants have injured Plaintiffs in violation of the California Fair Employment and Housing Act, *California Government Code* §§ 12927, 12955, et seq, by committing discriminatory housing practices as outlined herein.

175. Defendants have also engaged in threatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of familial status in violation of *California Government Code* § 12955.7.

176. Plaintiffs are entitled to compensatory and punitive damages, injunctive relief, and attorney fees and costs.

177. *California Code of Civil Procedure* § 352 tolls the statute of limitations for the Minor Plaintiffs herein, thus extending the timeframe for damages for them from the date the prohibited action began (in most cases, on the day the housing lease was signed) until two or three years after they reach the age of majority.

## FIFTH CAUSE OF ACTION

*Unruh Civil Rights Act, California Civil Code* § 51, et seq

178. Plaintiffs reallege and incorporate by reference paragraphs 1 through 177, above.

179. Defendants have injured Plaintiffs in violation of the Unruh Civil Rights Act, *California Civil Code* § 51, et seq, by discriminating against families with children in operation of a housing complex, a business establishment.

180. Pursuant to the Unruh Civil Rights Act, Plaintiffs are entitled to statutory damages, among other remedies, of up to three times their actual damages as determined by the trier of fact, but no less than $4,000.00 for each violation by each of the Defendants.

Case No. 14cv1633 LAB (BLM)

181.   Plaintiffs consider each day they were subjected to the restrictions of any lease provisions, rules, regulation or enforcement of discriminatory policies to constitute a separate violation of the Unruh Civil Rights Act as to each of them.

182.   Plaintiffs are entitled to statutory, compensatory and punitive damages, injunctive relief, and attorney fees and costs.

183.   *California Code of Civil Procedure* § 352 tolls the statute of limitations for the Minor Plaintiffs herein, thus extending the timeframe for damages for them from the date the prohibited action began (in most cases, on the day the housing lease was signed) until two years after they reach the age of majority.

## SIXTH CAUSE OF ACTION

### *Negligence*

184.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 183, above.

185.   Defendants owed Plaintiffs a duty to operate Windwood and/or any other housing complex identified herein, in a manner that was consistent with customs, practices, and standards of the industry and free from unlawful discrimination, and to hire, train, supervise and discipline their employees to fulfill that duty.

186.   Upon information and belief, Defendants violated that duty as a result of negligence, including, but not limited to:

    a.   Negligent failure to train their employees and staff regarding the requirements of the federal fair housing laws;

    b.   Negligent failure to hire persons familiar with the requirements of federal fair housing laws;

    c.   Negligent failure to supervise;

    d.   Negligent failure to discipline or terminate employees.

Case No. 14cv1633 LAB (BLM)

187.   As a result of Defendant's negligent conduct, Plaintiffs have suffered violation of their civil rights, been deprived of the full use and enjoyment of their tenancy, wrongful eviction, and/or physical and emotional distress, and are entitled to compensatory damages according to proof.

188.   *California Code of Civil Procedure* § 352 tolls the statute of limitations for the Minor Plaintiffs herein, thus extending the timeframe for damages for them from the date the prohibited action began two or three years after they reach the age of majority.

## **PRAYER FOR RELIEF**

189.   Wherefore, Named Plaintiffs and the Plaintiff Class pray for the following relief against Defendants:

a.     That the class described above, and/or any other appropriate sub-classes be certified in this action pursuant to *Federal Rules of Civil Procedure*, Rule 23;

b.     For an order declaring unlawful Defendants' pattern or practices complained of herein;

c.     For an order enjoining all discriminatory housing practices complained about herein and imposing affirmative injunctive relief requiring Defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide fair and equal treatment to all current, former and future residents regardless of their familial status;

d.     For an order awarding actual or compensatory damages to Named Plaintiffs and Plaintiff Class according to proof;

e.     For an order awarding statutory damages to Named Plaintiffs and Plaintiff Class, including prejudgment interest, according to proof,

f.     For an order awarding punitive damages to Named Plaintiffs and Plaintiff Class according to proof;

g.      For costs of suit, including reasonable attorneys' fees pursuant to the Fair Housing Act, the Fair Employment and Housing Act, and the Unruh Act; and,

h.      For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully requests that his claims be tried by a jury.

DATED this Tuesday, April 28, 2015.

LANDON WHITBY, ET AL, Plaintiffs


_/s/ Matthew S. Wilson_____
Matthew S. Wilson
WILSON LAW GROUP, PC
Attorney for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2015, I electronically filed the foregoing document(s) with the Clerk of the Court for the United States District Court for the Southern District of California by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

LANDON WHITBY, ET AL, Plaintiffs

 /s/ Matthew S. Wilson
Matthew S. Wilson
WILSON LAW GROUP, PC
Attorney for Plaintiffs
Email: matthew@wilsonlawcorp.com

Case No. 14cv1633 LAB (BLM)